# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

TERRENCE R. HALL,

    Plaintiff(s),

vs.

BILL YOUNG, SHERIFF OF CLARK COUNTY DETENTION CENTER and FORMER SHERIFF JERRY KELLER,

    Defendant(s).

2:03-cv-00748-RLH-PAL

**O R D E R**
(Motion for Summary Judgment–#64)

Before the Court is Defendants' Motion for Summary Judgment (#64, filed March 7, 2006). Plaintiff filed his Opposition (#78) on April 5, 2006. Defendants filed their Reply (#83) on April 20, 2006.

The Complaint initially attempted to state causes of action for injunctive relief, declaratory relief and for money damages. The claims all arise from the Plaintiff's opinion that he was served substandard food and received substandard medical care while he was a guest at the Clark County jail awaiting trial on Bank Robbery charges.

The injunctive and declaratory relief actions became moot when the Plaintiff was convicted and became an inmate at the State prison, approximately six months after his arrest. This Court ruled those actions moot on July 26, 2004, leaving the only remaining issue in this case: whether or not Plaintiff is entitled to money damages under 42 U.S.C. § 1983, because the food service and medical service was so bad that it amounted to a violation of the Plaintiff's constitutional rights.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence that would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988).

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979). Likewise, "legal memoranda and oral argument are not evidence and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd.*, 585 F.2d at 952.

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir. 1982).

## STANDARD OF REVIEW REGARDING CONDITIONS OF CONFINEMENT

To sustain a claim for inadequate medical care, Plaintiff must show (1) a defendant acted with *deliberate indifference* to a *serious medical need*; (2) that the defendant acted under color of law; and (3) the deliberate indifference of the defendant *caused harm* to the plaintiff. *See Estelle v. Gamble*, 429 U.S. 97 (1976). A complaint that a medical provider has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment, nor does medical malpractice become a constitutional violation merely because the victim is a prisoner. *Id.*, at 106.

A difference of opinion between the medical care provider and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332, (9th Cir. 1996). While poor medical treatment will at a certain point rise to the level of a constitutional violation, mere malpractice, or even gross negligence is not sufficient. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Even differences of opinion between professionals does not amount to deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

To sustain a claim that the food was sufficiently substandard as to constitute a constitutional violation, there must be a showing that the food was either insufficient to sustain life, or was in such a condition as to be likely to cause serious illness and needless suffering. *See*

*Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Hudson v. Palmer*, 468 U.S. 517. Being served cold food does not violate ones constitutional rights. *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992). There must be a showing that the serving of the food falls below the levels of common decency.

In addition to the foregoing, to sustain such a claim, a plaintiff must show that a defendant acted with deliberate indifference to the plaintiff's safety and welfare, that the defendant acted under color of law, and that the conduct of the defendant *caused harm* to the plaintiff.

DISCUSSION

Accepting as true all of the evidence Plaintiff has presented, and the evidence Defendants have presented that is not contradicted by Plaintiff, Plaintiff, as a matter of law, has not presented sufficient evidence to sustain either a claim that his medical care or the food he was served constituted a constitutional violation.

1. Medical Care

There is no evidence of a disregard of Plaintiff's medical care. There is no evidence that Plaintiff suffered a serious medical condition or that Defendants disregarded a serious medical need.

Plaintiff's claim is that he had had an automobile accident "shortly" before he entered the Clark County Detention Center which caused severe back pain; that he was under a doctor's care; that the prison officials failed and refused to contact his doctor to determine what pain medication he should be given; that he was denied pain medication he should have been given; that his requests for pain medication were improperly ignored; and that he was forced to sleep on beds which aggravated his discomfort. He submits his pre-detention doctor's medical records in support of his claim, together with his own opinion (not a doctor's) that his condition was aggravated.

A review of the evidence presented does not substantiate Plaintiff's claim. His automobile accident happened in February 2001. He was treated by a chiropractor named Doctor

Michael Barney, who treated him with the usual chiropractic modalities, including manipulation, "interferential current/electrical muscle massage" and "Thermo/Cryo therapy." There was no prescription for pain medication, which is not unusual, considering the fact that chiropractors are not authorized to prescribe prescription medicine for pain.

Dr. Barney's initial examination and evaluation reveals that only two of eleven Orthopedic tests were positive, producing a report of "moderate pain." Reports of pain are subjective. On palpation, he found some "spasticity" and a "moderate spasm" in the lumbar paraspinal musculature area. This was just five days after the accident. (Of passing interest is the fact that the doctor noted that Hall had already obtained an attorney. Whether the attorney recommended the doctor is not known. There was a claim or lawsuit which resulted from the accident.)

Dr. Barney took X-rays and noted no fractures or gross soft tissue pathology and concluded Mr. Hall had a sprain or strain of his back. The doctor then reports that he selected a plan of treatment that should return this patient to a pre-injury status and minimize the possibility of future residuals. That plan was for him to see the patient 3 times per week for 3 weeks. In each of the subsequent visit reports, Dr. Barney found that Mr. Hall was progressing as expected, that he was making good progress and the overall prognosis did not change. The doctor released Mr. Hall to go back to work on March 15, 2001. He last saw Mr. Hall in April 2001 and there is no evidence that the treatment plan to return Hall "to his pre-injury status and minimize the possibility of future residuals" was not successful. Indeed, Mr. Hall was apparently healthy enough to commit a bank robbery for which he was arrested and detained–pending trial–in the Clark County Detention Center. His arrest occurred June 4, 2001, two months after he had stopped seeing Dr. Barney and four months after the accident.

Given the fact that Dr. Barney's treatment had ended several months before, and that Dr. Barney did not prescribe pain medication to Plaintiff, any care giver's failure to provide the pain medication Plaintiff was demanding did not result from the lack of contact with Dr.

1  Barney. Plaintiff Hall wanted more or stronger pain medication than the prison nurse and doctor
2  would prescribe and he objects to the refusal to give him all he demanded. But none of that
3  describes a "serious medical need" or "deliberate indifference to a serious medical need." There is
4  nor even evidence of negligence or medical malpractice.
5        Even residual or aggravated pain from an injury that only initially caused moderate
6  distress does not constitute a "serious medical need."
7        There is other evidence to support the foregoing facts. Plaintiff was booked at the
8  jail late at night on June 4, 2001. By 9:00 the next morning he was screened by medical personnel
9  and prescribed and issued Ibuprofen, 800 milligram, tablets for pain. He was seen a number of
10 times by medical personnel (nurses and a doctor) while at the Detention Center. His pain medica-
11 tion was changed over the ensuing months, in response to his complaints, to Motrin and Tylenol 2.
12 He was offered and refused to take a followup test when he tested positive for tuberculosis.
13 Though he also claimed he had dental problems, he refused treatment and evaluation. He failed to
14 show for a dosage of medication in June 2001 and again in October 2001. He claimed he was
15 busy playing chess and the noise was so loud that he did not hear the call to come to the sick room.
16 Apparently, the pain and discomfort was not so severe that he could not be distracted by noise of a
17 chess game.
18       The records also reflect that while he did report his "recent" accident, the examina-
19 tion the next day, following his booking (and after being in what he described as very uncomfort-
20 able and pain aggravating circumstances), he stated that his pain was intermittent and on a scale of
21 1-10, only 2-3, there was no limitation of his range of motion, no problem with breathing, no
22 weakness, no radiation of pain and all vital signs were normal.
23       In conclusion, Plaintiff has presented no evidence, only his opinions, that his
24 medical care and treatment subjected him to a substantial risk of serious harm and that the prison
25 care givers deliberately disregarded his serious medical condition. For example, he complains that
26 Dr. Hoffman never took any X-rays of his back. However, Dr. Barney only took X-rays at his

initial examination and never indicated a further need for them.  There is no evidence that Mr. Hall suffered any injuries to warrant X-rays while in the Detention Center.  He also complains about overcrowding and the lack of hygiene of his fellow inmates.   Taking all evidence in a light most favorable to Plaintiff, he fails to show a basis for this claim.  He fails to show that his medical care, or his complaints that he was not given sufficient pain medication or good enough beds to sleep in, rises to a violation of his constitutional rights.

### 2. Food Service

This claim is that the food served to him was substandard or that it was served in a substandard method.  For example, he complains that food was served in overcrowded cells with inmates who had not bathed or been provided any type of hygiene.  He complained that in this condition the other inmates "were forced to have other inmates standing over them while the[y] attempted to eat, these inmates were at most times unwashed and in filthy smeelling[sic] clothes that they may have been in for days."  He complains that hot food was not hot enough and cold food was not cold enough.  He complains that the eggs were not cooked right and were served, together with potato salad at "inappropriate temptures[sic] causing concern for salmonella posioning[sic]."  For all of this, he complains that he "*may* have sufferd[sic] the *possibility* of harm of food born illness."  He admits that he suffered no sickness or disease from these events, but claims that was only due to his "self-sacrifice" in not eating all of the food.

Plaintiff admits that he was served the same food as everyone, and does not complain that there was not enough food to sustain life.  He also admits he did not become sick, nor does he present evidence of anyone who did, from the food that was served.

He presents affidavits from other inmates.  However, none of them were at the Detention Center as the same time as Plaintiff, and only contain complaints one might expect from people in a detention center.  Rodney Davis was there a year later, in 2002.  He generally complains that his hot food was served cold and his cold serve was served hot, and that his meals were like garbage.  Demarko Hall (no relation) was incarcerated from 2000 to 2001 (date unknown) and

1  his affidavit is almost word for word about cold food being served hot and hot food being served
2  cold.  He also complains of medical mistreatment when doctors tried to extract a bullet in his chest
3  "without properly using correct procedures."  A Mr. Mulder (his affidavit is nearly unreadable)
4  was at the Detention Center from May 2000 to March 2001, also before Plaintiff.   He also testifies
5  that the food was not served at proper temperatures.  Even these three make no claim that anyone
6  became sick or was otherwise injured by this food that did not meet their temperature standards.

7         The Court does not ignore Plaintiff's claims that food may have been stacked or
8  stored in an area where there was litter or garbage.  But there is no evidence that any of these
9  activities caused harm to the Plaintiff.  Complaining that the food was not to his liking, or that he
10  was "concerned" that he might get sick, does not raise the condition of the food or the standard of
11  the service of the food to a constitutional violation.

12         3. Defendant's Uninvolvement

13         Finally, nowhere does Plaintiff even attempt to show that the named Defendants,
14  the current and the former sheriff, knew anything of Plaintiff's medical treatment.  No report
15  suggests that his complaints were ever directed towards the sheriff, even though the sheriff has the
16  ultimate responsibility for his detention facilities, they are administered by subordinates and the
17  medical care is contracted to a medical provider.

18         While the Defendants' acts regarding the Detention Center were all carried out
19  under the color of law, there is no evidence that they acted with deliberate indifference to a serious
20  medical need of Plaintiff and that their deliberate indifference caused any harm to Plaintiff.  The
21  same is true regarding the food served Plaintiff during the approximately six months he was a
22  guest of the Clark County Detention Center.  Accordingly, for the reasons stated above, Defen-
23  dants' Motion for Summary Judgment must be granted.
24  . . . .
25  . . . .
26  . . . .

1  IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment
2 (#64) is GRANTED, and judgment shall issue accordingly.
3  Dated:   May 31, 2006

_____
**ROGER L. HUNT**
**United States District Judge**